THE CITY OF NEW YORK
ADMINISTRATION FOR CHILDREN SERVICES



------------------------------------------------------------x
In the Matter of Disciplinary Charges and Specifications
Under Civil Service Law Section 75 and Relating to:

| | | |
|---|---|---|
| NAME: | DELANO CONNOLLY | CHARGES AND |
| ID #: |  | SPECIFICATIONS |
| TITLE: | Agency Attorney, Level III | |
| LOCATION: | Brooklyn Family Court | ACS No.: |
| ADDRESS: | 330 Jay Street | 66053-945-002 |
| | Brooklyn, NY 11201 | |
| RESIDENCE: | | |

Respondent
------------------------------------------------------------x

## CHARGE 1:

Respondent, an Agency Attorney Level III, team leader and Officer of the Court, whose duties include the supervision of a team of attorneys, review of their legal documents, trial preparation and trials, as well as handling his own caseload presenting complex child abuse and neglect proceedings in Family Court in the City of New York, committed the following misconduct under the Civil Service Law § 75:

1. Provided false or misleading information during the course of an official ACS investigation, in violation of ACS Code of Conduct, § II E (4)(b) ; and constituting a violation of Rule 8.4 (c) of the New York State Rules of Professional Conduct for attorneys; and

2. Failed to conduct himself in a manner which would reflect favorably upon him, ACS, and the City, and conducted himself in a manner prejudicial to good order and discipline in violation of ACS Code of Conduct, § III, (B) (1); and

3. Failed to perform all duties imposed by law and/or by the tasks and standards of his ACS employment in violation of ACS Code of Conduct, § III, (B) (25); and

4. Failed to be courteous and considerate in his contact with the public and used demeaning, insulting, or harassing language in violation of ACS Code of Conduct, § III (B) (39); and

5. Engaged in conduct detrimental to ACS or which would undermine the effectiveness of the employee in the performance of his duties in violation of ACS Code of Conduct, Section III (B) (42).

1

Delano Connolly
66054-945-002
Page 2 of 3

## SPECIFICATION I:

On or about February 5, 2014, the Matter of Widenay B. (Docket No. NN22695-09) was scheduled for a permanency hearing in Part 41 of Brooklyn Family Court. When the clerk in Part 41 asked if all orders should continue, including the warrant issued for the child, the Respondent answered yes, until corrected by either the child's attorney or the case planner from Graham Windham (GW), Alessandra Angarita. Respondent began to argue with Ms. Angarita that he was not made aware that the child was no longer AWOL. Ms. Angarita explained that her agency had informed him in an email sent on or about November 6, 2013 that the child was no longer AWOL. Moreover, the case planner saw the email sent Respondent on or about November 6, 2013 in Respondent's case file and pointed it out to Respondent.

a) After the case was referred to Part 8 in order to vacate the warrant, Respondent raised his voice repeatedly toward Ms. Angarita, and yelled at her on the 8th floor of the courthouse, where he also heatedly insisted that Ms. Angarita had failed in her duty to provide him with a report three days prior to the court date, (a "duty" which does not exist under ACS policy);claiming, in effect, that Ms. Angarita failed to provide him with the information needed for him to vacate the warrant for the child Widenay B. In fact, Ms. Angarita had provided Respondent with a Permanency Hearing report on or about January 13, 2014 which definitively stated that the child was no longer AWOL but was in foster care placement in New York City.

b) Respondent's unprofessional demeanor in the courthouse led Ms. Angarita to feel so humiliated and harassed that she filed a complaint with her superiors against Respondent on or about February 5, 2014. This complaint was brought to the attention of Respondent's superiors, both verbally and in writing. Ms. Angarita reported that Respondent's verbal attacks left her shaking. The decision was made to remove Respondent from this case and assign the matter to another attorney.

## SPECIFICATION II:

On or about April 25, 2014, during the course of an official ACS investigation regarding his alleged misconduct with respect to the Widenay B. case (Docket No. NN22695-09), and while under oath, Respondent falsely stated that he first learned that Widenay B. was no longer AWOL on February 5, 2014. Respondent insisted that the case planner's failure to submit an addendum report prevented him from having the knowledge that the warrant was no longer necessary.

In fact, on or about November 6, 2013, Respondent received an email from Graham Windham, which gave him the child's placement information with a foster parent in New York City. That email was re-forwarded to him on or about November 13, 2013. Moreover, according to ACS's Legal Tracking System (LTS), Ms. Angarita submitted a Permanency Hearing Report for Widenay B. on or about January 13, 2014, which specifically stated that Widenay B. was no longer AWOL and was back in the care of a foster family in New York City. On January 16,

Delano Connolly
66054 945 002
Page 3 of 3

2014, Respondent received and accepted said Permanency Hearing Report in LTS, thereby giving notice to the author of the report, Ms. Angarita that the report was acceptable to submit to the court. Therefore, Respondent was on clear notice, both from the November 2013 emails to him and the January 2014 Permanency Hearing report, which he accepted electronically, that Widenay had returned to New York City and foster care. That fact triggered his duty to make an application to the Family Court to vacate the warrant for her.

Respondent's statement, under oath, that he had no knowledge prior to February 5, 2014 that Widenay was no longer AWOL was demonstrably and intentionally false. In the alternative, when Respondent accepted the Permanency Hearing Report in LTS on or about January 16, 2014, he failed to review it carefully, as required, thereby committing an act and an omission which constitute serious incompetence.

### SPECIFICATION III:

Between on or about November 6, 2013 and February 5, 2014, Respondent committed egregious incompetence while representing the agency in that he failed to vacate the warrant of arrest that was issued for Widenay B. by Referee Toshia M. McKnight on February 20, 2013 in Part 41 (Docket No. NN22695-09).

Respondent failed to vacate said warrant even though Graham Windham emailed him the child's placement information on or about November 6, 2013 and re-forwarded the information on or about November 13, 2013. Moreover, Respondent still failed to vacate the warrant even though on or about January 16, 2014, Respondent received and accepted the Permanency Hearing report that was filed by Ms. Angarita. That report specifically states that "Since the last permanency hearing, Widenay is no longer AWOL. Widenay is currently residing in the certified foster home of Ms. Audrey W. in Brooklyn." Respondent's failure to vacate the warrant of arrest placed the foster youth under risk of arrest after she had in fact returned to foster care.

### SPECIFICATION IV:

During an official ACS investigation on April 25, 2014, and while under oath, instead of accepting responsibility for his own incompetence, Respondent cited "Child Safety Alert 134" as the authority placing the responsibility on Ms. Angarita and her agency to have provided an "addendum" or "three day" report to Respondent prior to Widenay's Permanency Hearing. Respondent's citation in a sworn official interview of so-called "Child Safety Alert 134" as the basis for his failure to vacate Widenay B.'s warrant indicates either an intentional obfuscation or a total misunderstanding of agency and FCLS policy with respect to Permanency Hearing Reports. Child Safety Alert 134 does not exist. While Child Safety Alert 34 does exist, that policy is in no way applicable to the case in question.

3