UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DELANO CONNOLLY,                                            :
                                                           :
                    Plaintiff,                             :
                                                           :
          v.                                               :          **DECISION & ORDER**
                                                           :          16-CV-465 (WFK)
THE CITY OF NEW YORK, *et al.*,                            :
                                                           :
                    Defendants.                            :
------------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**  By Complaint filed on January 28, 2016, Plaintiff Delano Connolly, an attorney employed by the New York City Administration for Children's Services ("ACS"), brings this action against the City of New York (the "City") and ACS employees Joseph Cardieri, Paul Savarese, Ian Sangenito, Alan Sputz, Susan Starker, and Fredda Monn (collectively, the "Individual Defendants" and with the City, the "Defendants") alleging Defendants discriminated against him on the basis of his race and gender and subsequently retaliated against him for objecting to this discrimination.  Plaintiff alleges Defendants' actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, ("Title VII"), the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107, and his constitutional rights, asserted under 42 U.S.C. § 1983.  Defendants move for summary judgment on all of Plaintiff's claims.  For the reasons stated below, the Court GRANTS Defendants' motion for summary judgment in its entirety.

## BACKGROUND

The Court finds the following facts from the parties' Local Rule 56.1 Statements, declarations, deposition testimony, and other evidence submitted in support of the motion, to be undisputed or construed in the light most favorable to Plaintiff, the non-moving party.  Where facts in a party's Rule 56.1 Statement are supported by citations to evidence and denied by conclusory statements without citations to conflicting evidence, the Court finds such facts to be true.  E.D.N.Y. Local Rules 56.1(c)–(d).

Plaintiff began working for ACS in August 1999 and was assigned to his current position as Agency Attorney Level 3 on April 25, 2005.  Defs.' Statement of Facts ¶ 5, ECF No. 84 ("Def. St.").  Plaintiff's current office is in the Brooklyn office of the Family Court Legal

Services ("FCLS").  *Id.* ¶¶ 5–6.  Plaintiff is employed with the title Agency Attorney Level 3.

*Id.* ¶ 7.  Plaintiff's position of Agency Attorney Level 3 gives him "wide latitude for independent

and unreviewed actions," allows him to assist "in the overall supervision of the unit including

filling in for other legal staff in emergency situations, and reviewing the work of the unit."  *Id.*

Plaintiff is also empowered to "train and oversee the work of attorneys and interns."  *Id.*  He was

promoted to team leader by his supervisor, Defendant Paul Savarese, as of January 1, 2012.  *Id.*

¶ 8.  Plaintiff self-identifies as male and as an Asian or Pacific Islander.  *Id.* ¶ 9.

### A.  The EEO Investigation

On January 12, 2012, the ACS Office of Equal Employment Opportunity ("EEO")

interviewed Stacy Schecter, a junior female attorney in Plaintiff's office.  *Id.* ¶ 14.  Based on the

interview of Ms. Schecter, ACS EEO filed a complaint against Plaintiff alleging, *inter alia*:

Plaintiff had implied there would be repercussions for an intern and then Attorney Level 1 in his

office if they did not engage in a sexual relationship with him or tried to end such a sexual

relationship; Plaintiff has physically hit a female subordinate both in and outside the workplace;

while in the office he would regularly grab a female subordinate's breast in a sexual manner

without her consent; on at least two occasions, Plaintiff had a female subordinate perform a

sexual act on him on work premises; on at least one occasion he stated a sexual act was owed to

him for his supervisory assistance to a female subordinate; he told a female subordinate with

whom he was in a relationship to get on her knees and lick his shoes saying he liked the feeling

of power; he sent text messages and emails of a sexual nature to a female subordinate; he

engaged in an abusive sexual relationship with a female subordinate by socially isolating her and

directing her not to speak to anyone in the office; and on or about January 7, 2012, when the

female subordinate attempted to end her sexual relationship with him he sternly warned her to

never speak poorly of him in the workplace threatening her with isolation.  *Id.* ¶ 16.

The same date the complaint was filed against Plaintiff, he was transferred from the Brooklyn FCLS to the Queens FCLS. *Id.* ¶ 19.  After two days, he was transferred to ACS's Legal Compliance Unit. *Id.* ¶ 23–24.  Plaintiff retained his salary and status as an Agency Attorney Level 3 but was no longer a team leader. *Id.* ¶ 20.  While assigned to the Legal Compliance Unit, Plaintiff was assigned to draft training materials for new and senior attorneys and assisted ACS's deputy commissioner with projects. *Id.* ¶ 26.  Defendant Savarese informed Plaintiff Ms. Schecter had made allegations against him and she was the victim listed in the complaint. *Id.* ¶ 21.  He also informed Plaintiff he had to be transferred because of the pending EEO investigation into Plaintiff. *Id.*

Defendant Fredda Monn, an ACS EEO officer, investigated the allegations against Plaintiff. *Id.* ¶ 17.  The EEO interviewed twenty-one witnesses in the course of the investigation. *Id.* ¶ 28.  Plaintiff was interviewed by the EEO and admitted to using his ACS Blackberry and computer to discuss aspects of his sexual relationship with Ms. Schecter. *Id.* ¶ 29; Pl.'s Statement of Facts ¶ 29, ECF No. 88 ("Pl. St.").  Plaintiff admitted on one occasion Ms. Schecter performed oral sex on him at the office. Def. St. ¶ 30; Pl. St. ¶ 30.  Plaintiff then, on July 5, 2012, filed charges with the United States Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights, alleging he was discriminated against in violation of Title VII and the Age Discrimination in Employment Act of 1967 ("ADEA"). Def. St. ¶ 35.  On October 24, 2012, the EEO found the allegations against Plaintiff to be "unsubstantiated." *Id.* ¶ 36.  However, the EEO recommended the case be referred to Employment Law Unit ("ELU") as the investigation uncovered possible violations of the ACS Code of Conduct. *Id.* ¶ 37.  After an investigation, the ELU determined there was no basis to

bring disciplinary charges. *Id.* ¶ 39.  Plaintiff returned to work at the Brooklyn FLCS office in or around April 2013. *Id.* ¶ 40.

### B.  Second ELU Investigation: Lying Under Oath & Incompetence Allegations Sustained Against Plaintiff

On February 7, 2014, Alessandra Angarita wrote a letter alleging she was humiliated and harassed by Plaintiff in Brooklyn Family Court on February 5, 2014. *Id.* ¶ 45.  Ms. Angarita was a case planner at Graham Windham, a contract provider which works with ACS. *Id.* ¶¶ 42–43, 45.  Graham Windham requested ACS lodge a formal complaint against Plaintiff. *Id.* ¶ 47.  On or about May 13, 2014, ACS brought charges alleging Plaintiff had yelled at Ms. Angarita, falsely claiming she had not provided him relevant information, and falsely claiming she had a duty to provide it three days prior to the court proceeding. *Id.* ¶¶ 49, 54.  In fact, Graham Windham had provided the relevant information to Plaintiff more than a month prior. *Id.* ¶ 54. Plaintiff's verbal attacks against Ms. Angarita left her shaking, humiliated, and harassed. *Id.* The charges additionally alleged Plaintiff made false statements under oath, during the investigation, "committed egregious incompetence," and refused to accept responsibility for his own incompetence. *Id.*

After the charges were brought, Plaintiff was given the opportunity to rebut the charges according to ACS grievance procedures. *Id.* ¶¶ 56–58.  On May 13, 2014, Plaintiff submitted a memorandum in response. *Id.* ¶ 58.  On May 30, 2014, ACS sustained the charges against him and recommended the maximum penalty, short of termination, of sixty days suspension without pay. *Id.* ¶¶ 55, 60; Pl. St. ¶ 253.  After a hearing, during which Plaintiff was allowed to submit evidence, an ACS ELU attorney acting as hearing officer substantiated three of the four charges against Plaintiff: (1) discourteous behavior toward an agency worker; (2) providing false information under oath and/or incompetence; and (3) failure to vacate a warrant.  Def. St. ¶¶ 61–

75.  The maximum penalty of sixty days suspension without pay was upheld by the hearing

officer.  *Id.* ¶ 82.  In upholding the sixty-day suspension, the hearing officer found Plaintiff not

credible, *id.* ¶ 69, and wrote: "[a] penalty of sixty-day (60) suspension without pay is not

unreasonable.  Providing false and/or misleading information under oath is serious misconduct.

This is especially true in light of Mr. Connolly's position as an attorney, where his integrity and

trustworthiness are central to his duties in defending the agency."  *Id.* ¶ 82.  Further, she found

little mitigation was warranted.  *Id.* ¶ 78.  Plaintiff then, on September 16, 2014, filed a second

EEOC charge alleging he was discriminated against and retaliated against under Title VII and the

ADEA.  *Id.* ¶ 84.

Plaintiff is the only ACS attorney who has ever been suspended for sixty days without

pay.  Pl. St. ¶ 254.  Though Plaintiff contends "[s]everal Agency attorneys whose behavior was

similar or worse than what plaintiff was accused of received much lesser disciplines, if any," *id.*

¶ 255, none of the examples he cites lied while under oath during an investigation into their

incompetence.

### C.  Plaintiff's Attempts to Be Promoted

Plaintiff unsuccessfully sought to be promoted from Agency Attorney Level 3 on four

occasions between March 21, 2011 and October 4, 2013.  Def. St. ¶¶ 141, 150, 156, 170.  After

being interviewed as part of his March 21, 2011 application, Plaintiff was described by one

interviewer as "extremely self-serving: I have a lot of concern that he would not let his manager

in or let them know what is going on with the team.  He will run rogue and not follow

[supervisors'] directions.  Very concerned about how he handles cases."  *Id.* ¶ 145.  Two of the

other ten candidates were selected for the promotion.  *Id.* ¶¶ 142, 148.

On August 13, 2012, Plaintiff applied for promotion to the FCLS Legal Support and

Training Unit.  *Id.* ¶ 150.  During this second application, an interviewer wrote of Plaintiff, "[he]

has good experience but based on his training topic and presentation, I do not think he will be a good fit for the training unit" and he "was not engaging as a trainer." *Id.* ¶¶ 152–53.  None of the thirteen applicants who were interviewed for that position were hired.  *Id.* ¶ 154.

Plaintiff again applied for a promotion on February 4, 2013.  *Id.* ¶ 156.  One interviewer wrote of Plaintiff "[h]is answers were very self-involved; he lacked any humility or sense of his place in the agency," another wrote he "did not answer questions directly," and a third wrote he "[c]omes across very condescending, aggressive, sometimes did not answer questions directly.  Very knowledgeable about case law and statutes."  *Id.* ¶¶ 161–63.

Plaintiff applied on October 4, 2013 for the position of Assistant Supervising Attorney as one of forty candidates.  *Id.* ¶ 170.  After his interview, one interviewer wrote "answers not always responsive to the question and repetitive to prior answers," his "focus was too narrow," and "he does not show an ability to see the broader picture."  *Id.* ¶ 173.  The same interviewer also noted she had been informed by Plaintiff's supervisors he did not have a good relationship with others.  *Id.*  Another interviewer wrote Plaintiff's answers were not responsive and he had "a very narrow view of the role" and did not consider the agency as a whole.  *Id.* ¶ 174.  Multiple interviewers in the October 2013 application also noted Plaintiff's decision to remove his suit jacket at the beginning of the interview was unprofessional.  *Id.* ¶¶ 173, 175.

## PROCEDURAL HISTORY

Plaintiff filed suit against Defendants on January 28, 2016.  Compl., ECF No. 1.  Defendants then moved to dismiss the Complaint on September 30, 2016.  ECF No. 29.  The Court granted Defendants' motion in part on September 29, 2017.  ECF No. 57.  The remaining claims against Defendants are Plaintiff's: (1) Title VII discrimination claims post-dating August 31, 2011; (2) Title VII retaliation claims post-dating November 20, 2013; (3) 42 U.S.C. § 1983

6

claims against Individual Defendants post-dating January 28, 2013; (4) NYCHRL discrimination claims post-dating September 26, 2009; and (5) NYCHRL retaliation claims post-dating December 15, 2011.  *Id.* at 11–13, 15.

Defendants now move for summary judgment on all claims arguing they are entitled to judgment as a matter of law, asserting there are no genuine disputes regarding any material facts in this case.  For the reasons stated below, the Court grants Defendants' motion in its entirety.

**LEGAL STANDARD**

Summary judgment is appropriate where the "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'  A fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  The movant has the burden of showing the absence of a disputed issue of material fact, after which the burden shifts to the nonmoving party to present specific evidence showing a genuine dispute.  *See Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

## **DISCUSSION**

As an initial matter, the Court notes Plaintiff has submitted a declaration by his counsel Michael G. O'Neill, ECF No. 91, which "contain legal arguments and hearsay, which is improper." *Genometrica Research Inc. v. Gorbovitski*, 11-CV-5802, 2013 WL 394892, at *3 (E.D.N.Y. Jan. 31, 2013) (Spatt, J.). A "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Accordingly, "the Court will disregard any portions of [counsel's d]eclarations which are not made on personal knowledge and do not set out facts that would be admissible in evidence. Furthermore, the Court will not consider any legal arguments contained in [counsel's] [d]eclaration[]." *Genometrica Research Inc.*, 2013 WL 394892, at *4.

Plaintiff's Title VII and section 1983 claims are both analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Duckett v. Foxx*, 672 F. App'x 45, 46 (2d Cir. 2016) (Title VII); *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (Section 1983). "[A] plaintiff must first establish a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class." *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 767 (2d Cir. 2002). "If the plaintiff succeeds, a presumption of discrimination arises and the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the adverse decision or action. If the defendant proffers such a reason, the presumption of discrimination created by the prima facie case drops out of the

8

analysis, and the defendant will be entitled to summary judgment unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *Id.* (internal citation and quotation omitted).

Under the NYCHRL the discrimination inquiry is simpler: "the plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason. The employer may present evidence of its legitimate, non-discriminatory motives to show the conduct was not caused by discrimination." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013). An employer is entitled to summary judgment on the basis of legitimate motives "only if the record establishes as a matter of law that discrimination played no role in its actions." *Id.* (internal quotations and alterations omitted).

Plaintiff fails to establish a prima facie case under Title VII or section 1983 for his factual claims he was discriminated against by the EEO investigation, or his transfer to the Legal Compliance Unit. While Plaintiff argues "[t]he *de minimis* nature of the prima facie burden for all intents and purposes renders it irrelevant in all but the rarest of cases," Pl. Mem. of Law in Opp'n to Mot. for Summ. J. at 5, ECF No. 89 ("Pl. Mem."), this is one of those cases. Moreover, where Plaintiff has established a prima facie case, his failure to be promoted, he has failed to meet his burden to show Defendants' proffered reasons for their actions were pretextual. Plaintiff's NYCHRL claims also fail as he has not shown "by a preponderance of the evidence that [he] has been treated less well than other employees because of [his] gender" or race. *Mihalik*, 715 F.3d at 111 (internal quotation and citation omitted).

## I.    The EEO Investigation

Plaintiff's claim the EEO investigation into his workplace sexual harassment was a form of discrimination fails as he has not established the third element of the prima facie case under

Title VII and section 1983.  His claim under NYCHRL also fails as he has not established by a preponderance of the evidence he was treated less well because of his status as a member of a protected class.

### A.  Investigation by the EEO and ELU Were Not Adverse Employment Actions

To establish the third element of his prima facie case for discrimination under Title VII and section 1983, Plaintiff must show he experienced an "adverse employment action," defined as a "materially adverse change in the terms and conditions of employment.  To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (internal quotations and citations omitted).  "Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (internal alteration omitted).  "Where assignments fall within the duties of a plaintiff's position, receiving unfavorable schedules or work assignments does not, without more, rise to the level of an adverse employment action." *Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 224 (E.D.N.Y. 2014) (Seybert, J.) (internal quotation omitted).  "An adverse employment action is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Littlejohn v. City of New York*, 795 F.3d 297, 312 n.10 (2d Cir. 2015) (internal quotation omitted).

Under Title VII and section 1983, "disciplinary memoranda and evaluations are adverse employment actions only if they affect ultimate employment decisions such as promotion, wages, or termination." *Campbell v. N.Y.C. Transit Auth.*, 93 F. Supp. 3d 148, 168 (E.D.N.Y. 2015) (Brodie, J.), *aff'd*, 662 F. App'x 57 (2d Cir. 2016).  Additionally, "a suspension with pay,

particularly when implemented during an investigation into misconduct, does not, without more, constitute an adverse action." *Id.* at 169.  Plaintiff did not experience an adverse employment action as a result of the EEO investigation, he was not even suspended.  Def. St. ¶ 40.

Plaintiff's conclusory argument "Defendants discriminated against Plaintiff when they conducted an outrageously intrusive nine month [EEO] investigation based on a palpably meritless sex harassment complaint" is unavailing.  Pl. Mem. at 6.  After a close review of the evidence submitted, it is apparent to the Court the thoroughness of the EEO investigation was warranted by the serious allegations raised against Plaintiff, Def. St ¶ 16, and by his own admissions of unprofessional conduct such as discussing a sexual relationship using his work devices, oral sex in his office, and dating subordinates and interns in his office, *id.* ¶¶ 29–31, Pl. St. ¶¶ 29–30.  The length of the investigation was reasonable given it entailed review of a substantial number of personal messages, multiple interviews of Plaintiff and interviews of twenty-one witnesses.  Def. St. ¶¶ 28–29, 32.  The EEO investigation found the allegations against Plaintiff to ultimately be unsubstantiated.  *Id.* ¶ 36.  After a follow-up investigation by the ELU, which also determined there was no basis to bring charges, Plaintiff was returned to his original position.  *Id.* ¶¶ 39–40.

The EEO investigation and first ELU investigation into Plaintiff did not "affect ultimate employment decisions such as promotion, wages, or termination," *Campbell*, 93 F. Supp. 3d at 168 (internal quotation omitted), thus, they were not an adverse employment actions for the purposes of Title VII or section 1983.  The Court refuses to endorse Plaintiff's dangerous proposition that a mere investigation into workplace sexual misconduct, standing alone, is an adverse employment action.  *See Cox v. Onondaga Cty. Sheriff's Dep't*, 760 F.3d 139, 146 (2d Cir. 2014) ("Moreover, we cannot blind ourselves to the fact that an employer's failure to

conduct an investigation when faced even with an internal complaint, . . . might be viewed as evidence of an indifference to racial discrimination, if not acquiescence in it.  Indeed, we can say with confidence that the law must give breathing room for such investigations to be carried out.").

### B.  Plaintiff Failed to Establish He Was Treated "Less Well" Under NYCHRL

Under the NYCHRL, Plaintiff must demonstrate how a reasonable fact finder could find "by a preponderance of the evidence that [he] has been treated less well than other employees because of [his] gender" or race.  *Mihalik*, 715 F.3d at 110 (internal quotation omitted).  Plaintiff has failed to clear even this low bar.  Plaintiff contends the Court must conclude Plaintiff was treated less well because of the "outrageous manner in which the EEO investigation was conduct [*sic*] gives rise to an inference of discrimination."  Pl. Mem. at 12.  The Court disagrees.

Plaintiff proffers the EEO investigation of Defendant Ian Sangenito as a comparison to the EEO investigation into Plaintiff.  *Id*. at 12–13.  As an initial matter, Plaintiff has failed to establish by citation to evidence in the record, either the race or gender of Sangenito.  *See id.* at 13 (stating without citation "Sangenito, who is White").  But even assuming *arguendo* Sangenito was white, the attempted comparison is factually inapposite.  Sangenito was subject to an EEO investigation for allegedly creating a hostile work environment by having sexual relationships with two staff members in his office and being overly friendly when intoxicated.  ECF No. 87-5 (filed under seal) ("Sangenito Report"); Def. St. ¶ 139.  The anonymous complaint was filed against Sangenito on October 22, 2013 and the investigation concluded on March 12, 2014.  Sangenito Report at 2, 7; *c.f.* Def. St. ¶¶ 14, 36 (complaint was made against Plaintiff on January 12, 2012 and investigation concluded on October 24, 2012).  Eight witnesses were interviewed during Sangenito's investigation.  Sangenito Report at 9; *c.f.* Def. St. ¶ 28 (twenty-one witnesses were interviewed during the investigation into Plaintiff).  Ultimately, the allegations were found

"unsubstantiated," though Sangenito was directed to attend a mandatory EEO training. Sangenito Report at 7; *compare* Def. St. ¶ 36 (Plaintiff's investigation ended with a finding of "unsubstantiated").

It is inappropriate to compare Sangenito's EEO investigation with the investigation into Plaintiff. Plaintiff was alleged to have coerced a sexual relationship through threat of adverse employment action, physically assaulted a subordinate in the workplace, sexually assaulted a subordinate in the workplace, and engaged in an abusive sexual relationship with a subordinate. Def. St. ¶ 16. Plaintiff cannot rely on the investigation of Sangenito as a comparison as Sangenito was "not similarly situated to [Plaintiff] in all material respects." *Benzinger v. Lukoil Pan Ams., LLC*, 16-CV-8533, 2020 WL 1322478, at *12 (S.D.N.Y. Mar. 20, 2020) (Engelmeyer, J.). Moreover, even if the Sangenito investigation is used as a comparison, the record establishes "Defendants did not treat similarly-situated employees outside Plaintiff's protected class any more favorably," *Holmes v. Astor Servs. for Children & Families*, 16-CV-2260, 2017 WL 3535296, at *4 (S.D.N.Y. Aug. 16, 2017) (Siebel, J.), as the differences in the investigations were based on the severity of the allegations against Plaintiff and not on his membership in a protected class. *See Mihalik*, 715 F.3d at 110 n.8. "The evidence in the record simply would not allow a reasonable juror to conclude that [Plaintiff] was treated less well than any similarly situated employee" and Plaintiff's "conclusory statements to the contrary do not suffice and cannot save [his] NYCHRL discrimination claim. *Benzinger*, 2020 WL 1322478, at *15.

## II.     Plaintiff's Transfer to the Legal Compliance Unit

Plaintiff also complains his transfer to the Legal Compliance Unit, during the pendency of the EEO investigation was an act of discrimination. However, Plaintiff fails to make a prima facie case for discrimination under Title VII or section 1983 as the transfer was not an adverse

employment action.  Additionally, no reasonable fact finder could conclude Plaintiff's

involuntary transfer was a product of him being treated "less well" on the basis of a protected

characteristic, as required by NYCHRL.

### A.  Plaintiff's Transfer Was Not an Adverse Employment Action

"The Second Circuit has spoken regarding the types of employment transfers which may

constitute adverse action.  The law dictates that 'a transfer is an adverse employment action if it

results in a change in responsibilities so significant as to constitute a setback to the plaintiff's

career.'"  *Whethers v. Nassau Health Care Corp.*, 06–CV–4757, 2013 WL 3423111, at *6

(E.D.N.Y. July 8, 2013) (Hurley, J.), *aff'd*, 578 F. App'x 34 (2d Cir. 2014) (quoting *Kessler v.*

*Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir.2006)).  Transfers which do not

impact title, salary, or benefits, are not adverse employment actions.  *Staten v. City of New York*,

16-CV-5317, 2017 WL 2937698, at *7 (S.D.N.Y. July 10, 2017) (Koetl, J.), *aff'd*, 726 F. App'x

40 (2d Cir. 2018); *Whethers*, 956 F. Supp. 2d at 376–77 (holding transfer, which required

Plaintiff to report to different supervisors, separated her from her direct supervisor, and required

her to perform duties outside of the scope of her responsibilities, including employee trainings,

were not materially adverse employment actions).

Plaintiff's transfer to the Legal Compliance Unit was not an adverse employment action

as it did not affect his title, salary, or benefits and he continued to do work which fell within his

job description.  Def. St. ¶ 20; *see Staten*, 2017 WL 2937698, at *7; *Whethers*, 956 F. Supp. 2d at

376–77.  Plaintiff's duties in the Legal Compliance Unit were consistent with those of an ACS

Agency Attorney Level 3.  Def. St. ¶ 7, 26.  "[S]ubjective dissatisfaction with assignments does

not constitute adverse employment action."  *Valenti v. Massapequa Union Free Sch. Dist.*, 09-

CV-977, 2012 WL 1038811, at *14 (E.D.N.Y. Mar. 28, 2012) (Bianco, J.) (internal quotation

marks omitted).  "Here, plaintiff cannot point to any 'materially adverse' change to his career,

position, salary, benefits, or overall position as a result" of his transfer to the Legal Compliance Unit. *Id.* at *15. Indeed, Plaintiff stated in his deposition a general satisfaction with the work he did at the Legal Compliance Unit and noted he received "several" commendations for his work product. Dep. of Plaintiff at 133:18–23 ("I worked with the deputy commissioner on the ACS plan so I mean that was interesting work. It was work that – someone like the deputy commissioner, it's satisfying."), 150:17–23, ECF No. 86-7 ("Pl. Dep.").

Plaintiff also complains the transfer affected his employment because it encouraged rumors to run rampant. Pl. Mem. at 12. Though Plaintiff has failed to support his position with citation to the record, even were the Court to credit this factual assertion it would be insufficient. "Making inferences most favorable to Plaintiff, the alleged unlawful conduct—including retaliatory and harassing comments, malicious gossip, and leaking of sensitive information—do not constitute a materially adverse employment action." *Van Dyke v. Partners of Debevoise & Plimpton LLP*, 12-CV-8354, 2013 WL 5375542, at *3 (S.D.N.Y. Sept. 24, 2013) (Daniels, J.).

The Court notes Plaintiff's late arriving claim the position at the Legal Compliance Unit prevented him from utilizing overtime, "which had a direct financial effect on plaintiff." Pl. Mem. at 11. Plaintiff's contention, however, was not raised in the Complaint and is flatly contradicted by Plaintiff's sworn deposition. Pl. Dep. at 134:17–29 ("I still retained the title of level three . . . . I mean monetarily there was not a difference."). "[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). As Plaintiff makes no attempt to explain the contradiction or resolve the disparity, the Court emphatically rejects

15

Plaintiff's attempt to invent an issue of material fact sufficient to survive summary judgment. *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir. 1991) ("The rule is well-settled in this circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony.").

## B. Transfer to the Legal Compliance Unit Was Not Done for Discriminatory Reasons

Defendants have presented evidence of a legitimate, non-discriminatory motive to transfer Plaintiff. Moreover, the record sufficiently establishes discrimination did not a play role in the decision to transfer Plaintiff, entitling Defendants to summary judgment on Plaintiff's NYCHRL claim. *See Mihalik*, 715 F.3d at 110 n.8. Plaintiff was accused of disruptive workplace conduct: striking a female subordinate in the workplace; engaging in sex acts at the workplace; and using work e-mail and Blackberry phones to send inappropriate personal and sexual texts. Def. St. at ¶ 16. Plaintiff has offered no basis whatsoever in the record,[1] which would allow the Court to infer discrimination played any role in the decision to transfer Plaintiff. Though the Court draws all factual inferences in favor of Plaintiff, "[e]ven under the NYCHRL, [Plaintiff] 'may not rely on mere speculation or conjecture as to the true nature of the facts to overcome [Defendants'] motion for summary judgment.'" *Benzinger*, 2020 WL 1322478, at *15 (quoting *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010)).

---

[1] Plaintiff's quotation from *Trilby* by George Du Maurier, Pl. Mem at 16 n.13, is speculative and inappropriate; "[t]he non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (internal quotation and citation omitted).

**III.    Plaintiff's Failure to be Promoted**

Plaintiff further claims Defendants discriminated against him by not selecting him for promotion.  Pl. Mem. at 17.  Plaintiff applied for a promotion on four occasions, March 21, 2011 (Attorney Level 4), August 13, 2012 (position in Legal Support and Training Unit), February 4, 2013 (Attorney Level 4), and October 4, 2013 (Assistant Supervising Attorney).  Def. St. ¶¶ 141, 150, 156, 170.  To survive a motion for summary judgment based on a failure to be promoted under Title VII and section 1983, "a plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for the promotion for which he applied, (3) he was denied the promotion, and (4) the denial occurred under circumstances giving rise to an inference of discrimination on a basis forbidden" by the statute.  *Duckett*, 672 F. App'x at 47.  "If the plaintiff establishes such a prima facie case, and the employer presents a legitimate, non-discriminatory reason for its actions, it is the plaintiff's burden to present evidence that the employer's reason is mere pretext."  *Id.*  Similarly, under the NYCHRL an "employer may present evidence of its legitimate, non-discriminatory motives to show the conduct was not caused by discrimination," after the plaintiff has established his prima facie case.  *Mihalik*, 715 F.3d at 110 n.8.  Under the NYCHRL the employer is entitled to summary judgment on the basis of legitimate motives "if the record establishes as a matter of law that discrimination played no role in its actions."  *Id.* (internal quotations and alterations omitted).

**A.  Plaintiff's Prima Facie Case for Failure To Be Promoted**

There is no dispute as to the first, second, or third elements of Plaintiff's prima facie case. While Defendants contend Plaintiff has failed to show circumstances giving rise to an inference of discrimination, "[a] plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably." *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999).  Plaintiff has met this

17

minimal burden as candidates who were not male or not Asian/Pacific Islander were hired for the position in three of the four instances in which Plaintiff applied.  However, Plaintiff has adduced insufficient evidence to show Defendants' rationale in passing over Plaintiff was pretextual.

### B.  Defendants Presented Legitimate, Non-Discriminatory Reasons for Not Selecting Plaintiff for Promotion

In selecting candidates for promotion to the four jobs to which Plaintiff applied, Defendants were entitled to "choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 249, (1981).  As Plaintiff established a prima facie case based on failure to promote, a burden of production shifted to Defendants "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802.  "The defendant need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Tex. Dep't of Cmty. Affairs*, 450 U.S. at 254 (internal citation omitted).

Defendants proffer Plaintiff made a negative impression during each of his interviews, and support this legitimate, non-discriminatory reason with the notes from the interviewers themselves. *See generally* Def. St. ¶¶ 141–181.  After the Plaintiff's first application, his two interviewers gave him scores of 2 and 3, out of 5 and did not recommend him for promotion.  *Id.* ¶¶ 144–47 (The interviewers also appended the notes "extremely self serving: I have a lot of concern he would not let his manager in or let them know what is "going on with the team . . . . Very concerned about how he handles his cases," and "he is not flexible").  After interviewing Plaintiff for his application to the Legal Support and Training Unit one of his interviewers wrote "I do not think he will be a good fit for the training unit" and he "was not engaging as a trainer." Def. St. ¶¶ 150–53.  No candidates were ultimately hired for the position. *Id.* ¶ 154.  Plaintiff's

interviewers for his third application wrote he "did not answer questions directly" and "[c]omes across very condescending, aggressive." *Id.* ¶¶ 161–63.  The fourth set of interviewers wrote Plaintiff's "focus was too narrow," he "does not show an ability to see the broader picture" and he was unprofessional during the interview. *Id.* ¶¶ 173–75.  Defendants have further presented evidence the candidates who were selected for the positions received positive reviews from their interviewers. *See, e.g.*, *id.* ¶¶ 165–66.  Defendants have demonstrated a legitimate, non-discriminatory basis—his poor performance during the interviews—for their decisions not to select Plaintiff for promotion. *See Duckett*, 672 F. App'x at 47.

### C.  Plaintiff Has Failed to Show Discrimination Was A Factor

"[O]nce the employer has proffered its nondiscriminatory reason, the employer will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).  Plaintiff has submitted no evidence which would support a finding of prohibited discrimination.  In lieu of evidence, Plaintiff presents hypothetical questions.  Pl. Mem. at 19.  However, "[a]t the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotations omitted).

Plaintiff's citation to statistical evidence is unavailing.  Pl. Mem. at 19–21 ("[I]n all five boroughs, there was only one male level 4 attorney, as opposed to twenty one females.").  Without more statistical proof, this citation is insufficient to establish a prima facie case for discrimination let alone demonstrate Defendants' stated reasons were pretextual "because an individual plaintiff must prove that he or she *in particular* has been discrimination against." *Norgrove v. N.Y.C. Dep't of Educ.*, 08-CV-2202, 2011 WL 441678, at *3 (E.D.N.Y. Feb. 8, 2011) (Block, J.) (emphasis in original).  Plaintiff's "proffer of statistical evidence is insufficient

19

without additional evidence of discriminatory intent to prevent summary judgment." *Id.* It is not

enough for Plaintiff to simply claim "[t]hese figures shout out 'discrimination!'" Pl. Mem. at 19.

Similarly, the Court finds Plaintiff's hypothetical, "Why was [the other candidate], a

White female who had half plaintiff's experience, chosen over plaintiff?" insufficient to defeat a

motion for summary judgment. Pl. Mem. at 19. At the outset, the Court notes Plaintiff has

failed to support the proposition he had more experience than the successful candidate by any

citation to the record. *Id.* at 19–22. Plaintiff's "subjective assessment of [his] own qualifications

is insufficient to create a genuine factual issue as to whether the City's proffered reasons for its

hiring decisions are pretext for discrimination." *Concepcion v. City of New York*, 15-CV-2156,

2016 WL 386099, at *14 (S.D.N.Y. Jan. 29, 2016) (Peck, J.), *aff'd*, 693 F. App'x 31 (2d Cir.

2017). To demonstrate a genuine dispute of material fact on the basis of Plaintiff's superior

qualifications, "the plaintiff's credentials would have to be so superior to the credentials of the

person selected for the job that no reasonable person, in the exercise of impartial judgment, could

have chosen the candidate selected over the plaintiff for the job in question." *Byrnie v. Town of

Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (internal quotations omitted). And

moreover, "greater experience cannot alone establish that a candidate's qualifications are so

superior to another's that the employer's hiring decision may be found to have been

discriminatory." *Patel v. City of New York*, 699 F. App'x 67, 69 (2d Cir. 2017).

There is no basis in the record to establish discrimination was a factor in Defendants'

decision not to promote Plaintiff. Plaintiff has failed to show Defendants' legitimate, non-

discriminatory reason for not promoting him was pretextual. As such, Defendants are entitled to

summary judgment on Plaintiff's claims of failure to promote. *See Duckett*, 672 F. App'x at 47;

*Mihalik*, 715 F.3d at 110 n.8.

IV.     **Plaintiff's Title VII and Section 1983 Claims of Retaliation**

Plaintiff also alleges he was retaliated against for filing two charges with the EEOC.

Compl. ¶¶ 89–96; Pl. Mem. at 22–24.  Plaintiff alleges the following retaliatory actions: (1)

removal from special projects in June or July 2012; (2) denial of opportunities for training,

beginning in July 2012; (3) denial of a lateral transfer request in August 2012; (4) denial of two

promotions between November 26, 2012 and October 4, 2013;[2] (5) delay in transferring Plaintiff

back to the Brooklyn FCLS between February 2012 and April 2013; (6) the first ELU

investigation into Plaintiff beginning April 2013 and continuing until October 2014; (7)

ostracism at the Brooklyn FCLS since April 2013; (8) a "good" performance review in

September 2013; and (9) the second ELU investigation and 60-day suspension without pay.

Compl. ¶¶ 89–142.

As previously held by this Court, Plaintiff's Title VII retaliation claims which arose prior

to November 20, 2013 are time-barred.  ECF No. 57, at 11.  Additionally, Plaintiff's claims

against individual Defendants under section 1983, which arose prior to January 28, 2013, are

also time-barred.  *Id.* at 12.  Therefore, Plaintiff's claims he was removed from special projects,

denied opportunities for training, and denied a lateral transfer request are time-barred.

Plaintiff's timely retaliation claims, like his employment-discrimination claims, are

analyzed under the burden-shifting framework of *McDonnell Douglas*, 411 U.S. 792.  To

establish a prima facie case for retaliation, a plaintiff must show: "(1) participation in a protected

---

[2] The Court does not consider Plaintiff's claims he submitted additional applications for promotion in November 2012, December 2012, and January 2013.  "[A] self-serving, contradictory affidavit fails to raise a triable issue of fact when it conflicts with documentary evidence."  *Christiana Bank & Tr. Co. v. Dalton*, 06-CV-3206, 2009 WL 4016507, at *4 (E.D.N.Y. Nov. 17, 2009) (Seybert, J.); *see also BanxCorp v. Costco Wholesale Corp.*, 978 F. Supp. 2d 280, 299 (S.D.N.Y. 2013) (collecting cases) (Karas, J.).  Plaintiff's claim of having applied for three additional promotions, in November 2012, December 2012, and January 2013, is supported solely by his declaration, Pl. Decl. ¶¶ 60–62, and contradicted by the documentary evidence of ACS' internal systems, ECF Nos. 86-28, 87-6, 87-7, 87-8, 87-9 (filed under seal).  In any event, all the missed-promotions of which Plaintiff complains are time-barred under Title VII.  ECF No. 57, at 11.

activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (quoting *McMenemy v. City of Rochester*, 241 F.3d 279, 282–83 (2d Cir. 2001)).  "In turn, under the second step of the burden-shifting analysis, the onus falls on the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action.  Finally, as for the third step, once an employer offers such proof, the presumption of retaliation dissipates."  *Id.* (internal citations omitted).  The burden then shifts back to the plaintiff to show "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 359 (2013).

    "To prove that he engaged in protected activity, the plaintiff need not establish that the conduct he opposed was in fact a violation of Title VII.  However, the plaintiff must demonstrate a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) (internal citations and quotations omitted); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 111 n.8 (2d Cir. 2010).  "However, mere subjective good faith belief is insufficient; the belief must be reasonable and characterized by *objective* good faith."  *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 15 (2d Cir. 2013) (internal quotations and alterations omitted).  "The objective reasonableness of a complaint is to be evaluated from the perspective of a reasonable similarly situated person."  *Id.* at 17.  Though the Court has serious doubts about the good faith and objective reasonableness of Plaintiff's EEOC charges, drawing all inferences in his favor, the Court finds he has established the first element of a prima facie case.  Defendants do not contest the second element of Plaintiff's prima facie

22

case but do argue certain of the retaliatory actions were not "adverse employment actions" and the remainder lacked a causal connection to the protected activity.  Defs.' Mem. of Law in Supp. of Mot. for Summ. J. at 16–21, ECF No. 85 ("Def. Mem.").  Defendants also contend they had legitimate, non-retaliatory reasons for the investigations and denial of promotions, which Plaintiff cannot show were pretextual.  Def. Mem. at 21–22.  For the reasons stated below, the Court concludes Plaintiff's claims of retaliation under Title VII and section 1983 fail as a matter of law.

### A.  Adverse Retaliatory Action

"The definition of the third element, 'adverse employment action,' is more relaxed for claims of retaliation than for claims of employment discrimination."  *Adams v. City of New York*, 837 F. Supp. 2d 108, 121 (E.D.N.Y. 2011) (Block, J.).  In the retaliation context, Plaintiff can establish an "adverse employment action" by showing his employer's actions were "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

Employment actions deemed sufficiently disadvantageous to constitute an adverse employment action include intentionally scheduling a plaintiff for hazardous shifts, *Hicks*, 593 F.3d at 169, "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation," *Guity v. Uniondale Union Free Sch. Dist.*, 12-CV-1482, 2014 WL 1330636, at *17 (E.D.N.Y. Mar. 31, 2014) (Feuerstein, J.) (adopting report & recommendation) (quoting *Baptiste v. Cushman & Wakefield*, 3-CV-2102, 2007 WL 747796, at *9 n.4 (S.D.N.Y. Mar. 7, 2007) (Casey, J.).  "[I]n determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be

considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Hicks*, 593 F.3d at 165.

After a close review of the record, the Court concludes three of the non-time-barred retaliatory actions alleged by Plaintiff could be "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 57.  Specifically, Defendants concede the two ELU investigations and the denial of promotions were adverse.  Defs.' Reply in Supp. of Mot. for Summ. J. at 13, ECF No. 94 ("Def. Reply").

However, Plaintiff's remaining allegations of retaliatory action do not rise to the standard of "adverse employment actions" in the retaliation context.  The denial of Plaintiff's request to be transferred back to Brooklyn FCLS in April 2013 is akin to an unfavorable office assignment or teaching schedule, which "are not materially adverse actions in the retaliation context." *Klein v. N.Y. Univ.*, 786 F. Supp. 2d 830, 848 (S.D.N.Y. 2011) (Kaplan, J.); *c.f.*, *Sollazzo v. Rest.*, 15-CV-252, 2016 WL 1071031, at *11 (S.D.N.Y. Mar. 17, 2016) (Ramos, J.) (holding transfer "to a different location resulting in fewer tips and thus, lower income overall" could be adverse action).  Similarly, Plaintiff's complaints of office gossip and social ostracism in the office "do not constitute a materially adverse employment action." *Van Dyke*, 2013 WL 5375542, at *3. Finally, Plaintiff's performance review of 'good', which he describes as "a mediocre rating," Pl. Decl. ¶ 67, is not adverse. *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 443 (2d Cir. 1999) (holding two "average" performance reviews insufficient to establish adverse action in retaliation context), *abrogated on other grounds, White*, 548 U.S. at 53.  Evaluated *in toto* the individual actions also do not rise to the level of being "substantial in gross" as Plaintiff

has shown no evidence he was subjected to "a larger campaign of harassment." *Hicks*, 593 F.3d at 165.

### B. Causal Connection to Protected Action

To establish a prima facie case, Plaintiff must show, with all inferences being drawn in his favor, a causal connection between Plaintiff's filing of EEOC charges in June 2012 and September 2014, Def. St. ¶¶ 35–84, and the alleged retaliatory activity. "[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000). Plaintiff has presented no admissible evidence of a retaliatory animus or disparate treatment of fellow employees. As such, the question of causality turns on whether "the protected activity was followed closely by discriminatory treatment." *Id.*

The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 553 (2d Cir. 2001). In *Summa v. Hofstra University*, the Second Circuit held a delay of 4 months could establish a causal relationship when the retaliatory action occurred at "the first moment in time when the football coaching staff could have retaliated against [plaintiff] as she was not directly working for them over the intervening months." 708 F.3d 115, 128 (2d Cir. 2013).

Plaintiff has submitted sufficient evidence the first ELU investigation could be considered causally related to his protected activity. The ELU investigation into Plaintiff began

25

three to four months after his first EEOC charge and continued for up to 18 months.  Pl. Decl. ¶ 56; Def. St. ¶¶ 36–39; see *Summa*, 708 F.3d at 128.

However, after close review of the record, the Court cannot infer a causal relationship between Plaintiff's EEOC charges in June 2012 and September 2014 and Plaintiff's denial of promotion, his second ELU investigation, nor his 60-day suspension.  The denial of Plaintiff's applications for promotion in February and October 2013 came nine months after his EEOC charge, which is "too great to raise a plausible inference of discrimination."  *Dhar v. City of New York*, 655 F. App'x 864, 866 (2d Cir. 2016).  The disciplinary action for incompetence and second ELU investigation were not brought against Plaintiff until nearly two years after his June 2012 charge, which "suggests, by itself, no causality at all."  *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001); Def. St. ¶ 49.  Plaintiff submits no evidence, other than the timing, the denial of promotion and investigation were causally related to his protected activity.

### C.  ACS' Legitimate, Non-Retaliatory Reasons

Of Plaintiff's alleged acts of retaliation, he has established a prima facie case solely on the basis the first ELU investigation, which began in April 2013 and continued until possibly October 2014.  Pl. Decl. ¶ 56; Def. St. ¶¶ 36–39.  Under *McDonnell Douglas*, the burden then shifts back to Defendants to demonstrate a legitimate, non-retaliatory reason for their actions.  If they do so, the Plaintiff faces a heightened burden to show "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  *Univ. of Tex. Sw. Med. Ctr.*, 570 U.S. at 359.  The *but-for* standard for retaliation claims is more difficult to meet than the "lessened causation" standard for traditional discrimination claims under Title VII.  *Id.* at 360.

Defendants have presented a legitimate reason for the first ELU investigation into Plaintiff, namely "possible violations of the ACS Code of Conduct," including sexual harassment

and sexual relations in the office.  Def. St. ¶¶ 37, 39; Def. Reply at 17.  Plaintiff has adduced no evidence by citation in the record to show Defendants' stated reasons were pretext, let alone to establish retaliation was a but-for cause for the investigation.  *Univ. of Tex. Sw. Med. Ctr.*, 570 U.S. at 359.

## V.     Plaintiff's NYCHRL Retaliation Claim

As the federal anti-discrimination laws are "a *floor* below which the City's Human Rights law cannot fall" the analysis of Plaintiff's section 1983 and Title VII retaliation claims do not require the dismissal of Plaintiff's retaliation claim under NYCHRL.  *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 277 (2d Cir. 2009) (emphasis in original).  However, the Court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367.  "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."  *Id.*  Having carefully weighed the factors articulated in *Cohill*, the Court declines to exercise pendant jurisdiction and dismisses Plaintiff's claim of retaliation under NYCHRL without prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion for summary judgment, ECF No. 83, is GRANTED as to all claims.  The Clerk of Court is respectfully directed to terminate all pending motions and close this case.

**SO ORDERED.**

s/ WFK
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated:  August 18, 2020
        Brooklyn, New York

28